Will the clerk please call the first case? 2-25-0093-WC Jose Avila-Apolli by Christopher Williams v. the Illinois Workers' Compensation Comm'n at all. I deliver logistics, appellant by Colin Mills. Mr. Mills, you may proceed. Good morning, justices, may it please the court, Mr. Williams, my name is Colin Mills and I represent the appellant in this matter. I deliver logistics. Uh, we're here this morning seeking for a reinstatement of the unanimous decision of the commission in which it found that plaintiff Apolli, Mr. Avila, did not sustain an accident that arose out of his employment as it was not against the manifest weight of the evidence. There's more than a sufficient factual basis for the commission's decision in this case and the circuit court failed to show that the commission's decision lacked any rational basis. And instead the circuit court substituted its own judgments for that of the commission, which was improper. And then there was an abundance of competent evidence in the record to support the commission's decision. Uh, namely here, the video footage, um, and simply put it can't be said that no reasonable rational person could, uh, couldn't agree with the commission's decision. Um, obviously as this court knows, and as we know, a great deference must be given to the commission findings, especially with respect to factual matters, such as witness credibility and weight given to the evidence. Uh, using its own words, the commission found the video evidence in this matter to be overwhelmingly persuasive when coming to its decision. Um, my opponent argues that different inferences could be drawn from the same evidence, which of course we disagree with, but in any event, that's not the proper test. And we believe that the record, uh, fails to support the conclusion or position that an opposite conclusion would have written the proper finding. As to the case itself, you know, the commission unanimously found that, you know, we have a traveling employee who took himself out of the course and scope of his employment by way of his own rashness and anger, the events of August one of 2023 were set in motion due solely to the plaintiff's own actions as shown in the video evidence and relied upon by the commission, despite the plaintiff's attempts to spin what we see in the videos and more importantly, what the commission, uh, panel saw in the videos, the evidence in the record speaks for itself and certainly more than sufficient to support the commission's determination that plaintiff's actions as the aggressor on the date of accident were not reasonable and foreseeable. For example, what we see in the video is we see the plaintiff honk at a car that pulls into a driveway in front of them. Plaintiff then shows him, chooses to stop his van instead of merely driving away. And instead he decides to speak and yell, uh, in a contentious animated, heated fashion, I would say, uh, to the individuals that are outside of the van. Mouthing would appear to be profanities and obscenities and making threats. Plaintiff makes nonverbal hand gestures to the individuals outside of the van. He forcibly removed his seatbelt to exit the band of his own cord. And after he returned to the van, after the initial altercation, he continues to make verbal and nonverbal gestures and signals to those outside of the van. On the other hand, there's nothing to support that the unloading groceries or that any of the plaintiff's actions were aimed at looking out for anyone's interests or safety. His, the plaintiff's own report to the insurance company to CCMSI and his recorded statement that he was physically pulled from the van at the beginning of all the altercation, which he then admitted that arbitration was not truthful, was not supported by the video evidence. Uh, the plaintiff's testimony that he had to break the van suddenly at the beginning of the altercation. So as to avoid the car pulling in the driveway, that's not supported by the video evidence. His testimony that the individual in the car that pulled into the driveway came at him aggressively and made a beeline towards him is not supported by the video evidence. Plaintiff's testimony that the roadway wasn't clear, which was prohibiting him from block and blocking him from simply driving away at the onset of the events was not supported by the video. In total, the record supports the finding that the plaintiff was the aggressor and the sole cause of the events that occurred on August 1st, 2023, that behavior wasn't reasonable. He made repeated choices that escalated the conflict that he created in the first place rather than avoid it. He chose not to drive away, to stop, honk, shout at strangers and exit his vehicle for a direct confrontation, and by yelling at strangers even more when returning to his vehicle. Counsel, counsel, let me jump in. You've described, you've described sort of a road rage for lack of a better phraseology incident. Um, you've got what is an argument between people out there. How close, uh, would they have gotten to one another during this argument? What, what do you, what do you read from the record? I'm not sure. I understand what you mean. You're saying that they approach one another, how close do they get to one another? Well, they come to blows outside of the van after the plaintiff leaves the van. Well, that's my next question. When, when they were together arguing who, who touches the other first. I I've watched this video many times. It's, it's, it's hard to say if the, uh, gentleman outside comes first and the plaintiff raises his arm or if it's sort of the other way around. But I don't know that that necessarily makes a difference. As the commission said, you know, that that who throws the first punch is not necessarily the aggressor. And I think that as the commission found unanimously by their review, that the plaintiff was the aggressor in this action by way of his verbal threats and the way that he acted in creating and escalating this. And, and that a physical, um, altercation doesn't necessarily have to be, you know, the, the factor as to who the aggressor is, I think it's, it's clear that the plaintiff was the aggressor just by looking at his actions. You said that you said that the, uh, the plaintiff, uh, by his verbal threats was the aggressor, what threats were made by him initially? Well, I think as you, as you watch the video, um, and he initially, you know, honks the horn and he says, you know, you can read his lips. I think the commission, you know, agreed that he was shouting profanities. Come on, you know, books to be starting a fight, yelling profanities as to what, you know, maybe he's going to do without me using those same profanities. Was there audio on this videotape? No justice. There's no, no audio. Well, but yeah, go ahead. No, but I think, I think it's clear, you know, and supported by the commission's finding as to, you know, he makes a shooting gun gesture with his hand, it looks like, uh, you know, it says, you know, I'm going to, I'm going to beat your ass. You know, I think it's exactly what he says by reading his lips. Okay. So the question is lip readers and the arbitrator, right? Pardon? They're lip readers then, right? Well, yeah, that's all we can do is look at the video that's in front of us. Didn't the, excuse me, counsel, didn't the claimant testify and excuse me, if I have this wrong, they said something like, you're lucky I can't get out or something. You know, you're lucky. Um, so I just offer that. But my real question is you've not described the period where he was injured. You you've not touched on that at all. Is that significant? Because the way I read it, they have this dust up and a back and forth. And then I think the whole thing hinges on the determination that after he drove away and he said, you're lucky I'm not, you know, I can't fight you. Um, and then I, as I understand it, four minutes passed, then he clearly then it, what the whole thing lies on from your point of view is that it naturally follows that after that, that naturally these combatants or, you know, the, the driver, as he's called, is going to enlist three Confederates, get into a different car, follow the claimant to a different delivery and four minutes later, jump him, beat him and rob him of his chain and that, so all of that was fomented by, and the cause of connection, uh, is unbroken. According to you, all of it's fomented by the plaintiff or, excuse me, the claimant. Yeah, that's correct. And, and the commission that was the commission finding as well, unanimously. And, um, to the, to the first part of your question as to what the plaintiffs testified that he mouthed is, you know, you're lucky I can't do this or the commission found the, the, the point it's not credible. Your second point, it is extremely important. The, the second stage of the incident, I guess he'll call it is where the injuries were sustained. And I think that, uh, clearly it's the same. It stems from the first one. If his, there's no natural break. There's no break. I don't believe there's a natural break at all because naturally they're going to jump in their car and follow him. It's just, well, according to the point, if they told him at the onset of the initial altercation, they were going to follow him. So that would make sense that it would be one continuous altercation. If, if the plaintiff was told as he testified that they were going to follow, let me, let me ask just to follow up on that, even if they said that they were going to follow him and doesn't buy his leaving the area. Uh, I mean, how long does he have to be traveling away from the initial area of confrontation before there is a break? I mean, is it four blocks? Is it four miles? Is it four city away? I mean, he left the scene of the initial situation and then there was nothing requiring anyone else to follow him, to continue the fight. He didn't invite them to come someplace. Uh, Hey, I'll meet you at the park. You know, I'll meet you on the recess playground, nothing like that. So, I mean, how, how, how, how can we not determine that he left the initial confrontation and anything after that is a separate incident? Well, I think that it's a question of fact, and it's a case by case basis. And the commission found unanimously here that there was evidence to support that it was one altercation. The same individuals followed him. It was only four minutes later. It was the very next stop. Uh, you know, the, the plaintiff says in his brief that he was, uh, attacked by assailants from an unfamiliar vehicle, the vehicle, the maroon sedan is in the video from the first incident. We've got the same actors, uh, at least maybe not.  Mills. I mean, you know, I think your focus is on the wrong actor. The actor here is the claimant and what he did and the claimant, the claimant walked away because he had a job to do, right? He wasn't gonna so, Oh, well, I think I'll go do my job now. And then maybe I'll get back to this fight. He went to do his job. He went to make a delivery. So, I mean, I don't see how anybody, any rational person looking at that could conclude that, uh, that this wasn't a natural break. I don't think it ever, it ever broke. It was, he was told by his own testimony that he was going to be followed to the next place. This never even starts in the first place. Well, why does it matter? What, what does it matter? What, what the aggressor said? What matters is what the claimant did, right? The claimant went about his job. The claimant drove to his next stop. Well, that's his job, right? That's his job. It is his job. Okay. He made a delivery that he created. He made his delivery. Yes. He went and made his next delivery, the very next stop and the same people that he instigated and started a melee with, followed him as they told him they were going to do at the very beginning, according to his own testimony. So under your rationale, it doesn't matter then, um, what the claimant may have done afterwards, anything that followed that initial incident would all be chalked up to the claimant as the aggressor, right? Because he's the one who made the hand gesture and he's the one who mouthed something to the, um, to the assailants. Yes. The commission found the claimant was clearly the aggressor in this case. And the melee that, that ensued afterward was a, was a direct result of his own actions. So he basically commission says if you invite a beating, that's okay. Well, if you're the aggressor in an altercation of, to which you sustained injuries, then it's not compensable. And that's the situation that we have here. So we're asking that the commission's decision be reinstated as it wasn't against the manifest way of the evidence, um, and that the claim be denied, uh, based on the, uh, unable to show that the accident arose out of his employment. Okay. Uh, any questions, further questions from the bench? None. Okay. Counsel, you will have time to reply. Okay. Thank you. Thank you, Mr. Williams. You may respond. May it please the court counsel. I'm Chris Williams. I represent the appellee plaintiff, Jose Avila. Um, as stated in my brief, we agree that the circ with, with the circuit court, that the commission's decision was against the manifest way to the evidence. We also contend that the commission's analysis regarding whether he was the aggressor was misguided, uh, the case law regarding the aggressor exception for workplace fights focuses on exclusively on fights between employees on the employer's premises. I believe the correct analysis for our cases is that of a traveling employee. And as we know, a traveling employee is exposed to risks of the street and the arising out of prong is more broadly construed. Uh, an injury is compensable. If the employee's conduct was reasonable and foreseeable. In our case, Avila was going about his ordinary workday, delivering packages for his employer. Uh, his conduct was reasonable and foreseeable the incidents, which let's examine that. Sure. And what's the risk of the street here? The risk of the street here, I believe is being attacked by, um, by strangers, frankly.  Okay. Um, so we're focusing at what point in time, uh, the first point in time when he was struck outside the van or the second point in time when he was making the delivery for, I think both your honor. So, so yeah, I'm sorry, go ahead, Justice Holder issue. Well, uh, no, go, go ahead. Justice Barbera. My question is this, uh, if the second incident at the second location never happened and assume for a moment that the, the beating that he took, took place at the initial, uh, stop and location based on, and then everything else in the fact pattern stays the same car swerves in front of him, cuts him off, he makes some gestures, he says whatever we think he says, uh, and the person that cut him off gets out and beats him up, um, I think there was testimony that there were more than one person involved, uh, on behalf of the other driver, uh, so two or three people get out and beat him up. Uh, is that compensable? Is that something that is, you know, alleging or assuming that his, uh, his gestures and his words, maybe, I don't know if they, I don't know that we know if they rise to an invitation to fight or a provocation to fight, but they were angry words, is that something that is compensable?  In our, in our case, he was cut off. Um, the, we have the benefit of the video in this case from both the interior and exterior view and in the video, which is supplied by, um, his employer also includes a G force meter across the bottom, which shows us exactly when he had to slam on the brakes when he was cut off. So yeah, I mean, he reacted angrily, which I think is a, a foreseeable response to someone cutting you off in traffic. I mean, everyone drives, everyone sees that. What happens next is, is sort of, I think ultimately where the commission got this the most wrong is he has someone who he testified, told him he was going to follow him, correct? So the commission essentially says his only legitimate option was to drive away. And avoid the situation entirely in their decision. They, they specifically state that he could have driven away with no problems, that there were no people in front of him. I point out in my brief and I gave you specific screenshots of this specific moment in time, at the moment that the gentleman gets out of his vehicle, the, the car, the, the, the driver will call him. The very second there is a woman directly in front of his van. So if he were to drive off, the only option for him is to hit that lady. I mean, there is just, there's no doubt about it. The video is clear. In addition, they, they talk about him angrily removing his seatbelt when the, when the driver gets out of his car in a simultaneous action. Again, the video is clear. He gets out of his, he pulls a seatbelt out when the gentleman is halfway to the truck and, and we have to, we, we. Counsel. This lady that you're saying is in front of the van, right? What do we know about the lady? It was, did she join somehow with this group? No, I think she came, frankly, I think she came in, she saw what was happening, the fight and she, I think she tried to break it up, frankly, if we, I mean, I don't think we know for sure. She didn't testify and we, but, but just from the view of it, when he gets cut off, she's, she's entering the crosswalk. She's right at the corner of near the grass when he, and when he pulls his or puts the car into part of the V the van into park, she's directly in front of the vehicle in the middle of the crosswalk. So I don't know that she necessarily had anything to do with the fight itself, but his, his choices basically were one of three. Number one, drive through this woman who's in front of him. Number two, sits strapped into a seat with a wide open door with this guy walking violently towards you and be a sitting duck for an attack. Or the third option, which is what he did, which I think is the most prudent in this situation is he exited the vehicle so he could defend himself. He exited the vehicle with his hands by his side and he was immediately attacked. I know Mr. Mills says that he isn't sure who threw the first punch. I don't think there's any question by watching that video who threw the first punch in this situation. So, so yes, he was not the aggressor. That's just he, but your opposing counsel says it's not who throws the first punch to determine who's the aggressor.  So you want to address that? Right. So this, again, he, my, my clients only got out of the van because of the situation. He wasn't trying to escalate the fight. He testified that he was not trying to fight. He was trying to talk to this gentleman to calm him down, frankly. So, so he did not get out in an aggressive manner. He got in and he got out to defend himself. I think that's fair. But, but no, he was not trying to start a fight. He, he probably would have driven away if there wasn't someone directly in front of his van. So then addressing the second incident, again, as, as the justices pointed out, he was many blocks away, four minutes later, completing a different delivery. This is a pure risk of the street. He's taking a photograph with his phone of the delivery. His back is to the road. He's, he's defenseless. He's vulnerable. And a new vehicle pulls up and the initial driver does, he is in that vehicle, but there are three entirely new gentlemen who jump out, including the first person who jumps out and runs right at, at the, the claimant and starts attacking him. So to, to, to say that, that Avila's argument with the driver somehow opened him up to an attack in a vulnerable position four minutes later from people he'd had no interaction with previously defies logic, frankly. So the, this is a new attack. This is a new incident and that is where he sustained his injuries anyway. So I don't think there's any, any way we can say that he was the aggressor in that situation is he was simply making his delivery, going about his job and he was, he was stuck in a, in a vulnerable position. But Mr. your opposing counsel says this is all one continuous situation. Again, I don't know that it can be a continuous situation when there are three new assailants. I don't know how you can, how you can pin the claimant's actions with one gentleman four minutes prior to getting beat up by three other guys from a different car. And again, he did leave the scene. So even if, again, I'm not conceding that he was the aggressor in the first incident, but even if we do concede that, he has left the scene. He's gone about his job. He hasn't done anything threatening. He hasn't done anything to, to instigate any other altercations going forward. He's put himself in a vulnerable position. He's not defending himself. He's, he's not, his head's not on a swivel. He's not, and he gets attacked. So it's an, it's absolutely a new accident or new incident. So Mr. Williams, I mean, you would acknowledge that there's a line of cases that hold that, you know, you don't need to be the, you don't have to throw the first punch, to be the aggressor. And, you know, a lot of that would then turn on what was said. Right. And, I mean, I think your argument here is that it's speculative, the commission's decision was speculation because you don't know what was said in this case. So there's no audio. Is that your argument? Well, my argument is twofold. Number one, the, the aggressor case law all deals with two employees within an employer setting. So it's, it's a question of whether this is a, a workplace altercation and whether the person who was injured was the instigator. And, and in those cases, in every case that's cited, it goes much further than a couple of words, a few seconds before the altercation. We're talking about, you know, repeated threats, repeated actions over a period of time, and really quite violent threats before, before the, the. Well, I mean, you could imagine if an assailant, you know, comes at you and says, I'm going to kill you with, and he's got his hands up that a, you know, a claimant who throws a first punch would not be considered the aggressor in that situation. But my point is this, that, you know, there might be some inferences to be drawn, but you can't draw any inferences here because we don't know what was said. And so what you have here is speculation. We have speculation, but we also have clear video evidence that he, I think the mission makes it pretty clear in the decision that the, the only correct thing for him to do is drive away from the situation, not engage. And he simply couldn't drive away from the situation given the circumstance. So, so the aggressive person in this, in this altercation was, was the gentleman who pulled into a driveway, jumped out of his car, left his door open and marched straight towards the van. I think he was just based on the totality of the circumstances. He's the aggressor here. So even if we did, if we determined though, that he's, he's not entitled to any kind of compensation based on his failure to do as the commission suggests, leave immediately before the confrontation took place after his angry words, but before he got hit, that, that still doesn't get around the fact that he was attacked in a second location by different people that were not necessarily to my understanding parties to the first confrontation. Did, did I hear you correctly? And correct me if I'm wrong, his, at the second location, when, when he was struck from behind, that was not from the driver that he, that struck him the first time. This was from one of the other three assailants. Is that correct?  The, the first person to jump out of that vehicle was a new person. Okay. So that person wasn't even involved in the first incident. He's not involved in the first, was he a passenger in the, in the car? There's no evidence. Yeah. It's unclear, but, but he's not seen in the first video. So to the best of our knowledge, that individual never even, uh, received those angry words, wasn't on the receiving end of those angry words or gestures. Uh, he just decided there was a fight to be had and he wanted to be a part of it. I, I think that's, that's an accurate description.  Okay. Did the commission or did, was there any parsing out of the injuries sustained in the first stop versus, uh, the injuries when the claimant was involved in returning to his duties and delivering packages? I don't think so. Judge the, the, the first day, I mean, he testified in the video. Again, we have the, the, the benefit of the video. You can actually see his, his appearance between the two of the two attacks. And he is very, he seems fine after the first attack, frankly. So he might've just had some bumps and bruises type type injuries, which, you know, wouldn't, might not even, you know, rise to a level of a worker's comp case. And then in the, after the second one, it's, it's clear that's where he, where he sustained his real injuries. The first, the first incident didn't result in him falling, right? He just got punched in the face, turned around and got in his van and left. No, I think there was a little bit more than that. It was, it was a, it was a scuffle for sure. Um, but, but he, he, he's definitely sustained his injuries in the second accident, the second incident. So to sum up, taken in the totality of, uh, of the circumstances, Mr. Avila was not the aggressor. He was the victim of a bad situation. As a traveling employee, he's entitled to additional protections under the act. And the circuit court correctly found that the commission's decision was against the manifest weight of the evidence. And we are here asking for that decision to be affirmed. Thank you. Any questions from the bench? No. Okay. Uh, thank you, Mr. Williams. Thank you. Counsel, you may reply. Just a few, just a few things. I think that the commission's finding based on the video evidence, it's, it's clear that the plaintiff was the aggressor and the incident that took place on this date of accident and that his actions as the aggressor constitutes unreasonable and not foreseeable conduct, uh, which, you know, as we know, traveling employee status doesn't, doesn't validate unreasonable conduct and escalation. I think as, as just small and asked the first time I was up, I think the case hinges on, you know, the totality of the circumstances and as the commission found the second incident doesn't happen, uh, but for his own rationals, anger actions as the aggressor, um, that started the melee of this day. It all stems from, from one incident. It's one continuous altercation. We have people that are involved in the first one, or at least present in the first one that come to the second one. The maroon car is obviously involved, even though plaintiff says it's an unfamiliar vehicle. It was there twice. We've got the same folks. These weren't additional different people that showed up at the second address. They were the same folks from the first address that took place in the melee that the plaintiff started as the aggressor and through his unreasonable and not foreseeable conduct while delivering packages on the day to the accident. Based on the evidence contained in the record, again, we believe that the commission's unanimous decision was the right decision and not against manifest way of the evidence. And we have certain court decision be reversed and the commission's decision, uh, reinstated. Thank you. Are there questions from the court with the councils? Okay. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue at this time, the clerk of our court will escort you out of our remote courtroom and we'll proceed to the next case. Thank you. Thank you.